IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

EMIL R. RAGLAND                :

                             :

     v.                 :   Civil Action No. DKC 2008-1817

                             :

A.W. INDUSTRIES, INC.      :

                             :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment action is a motion to dismiss filed by Defendant A.W. Industries, Inc. ("A.W. Industries"). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendant's motion will be granted in part and denied in part.

**I. Background**

Plaintiff Emil R. Ragland, an African American male, is currently employed as a tractor-trailer driver for Defendant A.W. Industries. Defendant is a manufacturer and distributor of Serta Mattresses and bedding accessories. Plaintiff, along with Defendant's other employees, is represented by the union UNITE HERE. The terms and conditions of Plaintiff's employment are covered by a collective bargaining agreement ("CBA").

Plaintiff alleges that Defendant discriminated against him on the basis of race by giving him a base salary of $14 as opposed to $16.25 per hour. Plaintiff alleges that $16.25 per hour is the minimum base pay for a tractor trailer driver pursuant to the CBA.

Plaintiff further alleges that he was discriminated against on the basis of race when Defendant failed to increase his salary to $16.25 per hour, as it had allegedly promised to do.  Plaintiff alleges that white truck drivers are paid a salary of $16.25 per hour.

According to Plaintiff, Defendant refused to pay "trip pay" when Plaintiff made trips to various locations outside of Maryland, and "stop pay" when he made multiple stops along a route, as required by the CBA.  Defendant also ordered him to return to Maryland after making long distance trips, instead of paying him the "overnight pay" that he was due.  Plaintiff further alleges that Defendant routinely paid its white employees the required "trip pay," "stop pay," and "overnight pay."  Plaintiff complained to Defendant that he was paid less than his fellow white drivers and attempted to file a grievance through the Union, but the Union elected not to pursue a grievance on Plaintiff's behalf.

Plaintiff alleges that shortly after he complained to the Union, Defendant retaliated against him by refusing to give him work assignments, denying his vacation requests, and reprimanding him for frivolous reasons.  Plaintiff filed an action in this court on July 11, 2008, and subsequently filed an amended complaint on November 10, 2008.  Plaintiff asserts nine counts against Defendant: (1) race discrimination in violation of Title VII, 42 U.S.C. 2000e *et seq.*; (2) violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*; (3) violation of the National

Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151-169; (4) violation of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §§ 141-197; (5) breach of contract; (6) retaliation; (7) hostile work environment; (8) violation of 42 U.S.C. § 1981; (9) violation of Article 49B of the Maryland Annotated Code; and (10) intentional infliction of emotional distress. (Paper 4). Defendant filed a motion to dismiss counts II, III, IV, V, VII, IX, and X on November 26, 2008. (Paper 6).

## II.  Standard of Review

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Nevertheless, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(internal citations omitted).

In its determination, the court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff.  *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999)(citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).  The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Iqbal*, 129 S.Ct. at 1950, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)).  Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*

The statute of limitations is an affirmative defense that a party typically must raise in a pleading under Fed.R.Civ.P.8(c) and is not usually an appropriate ground for dismissal.  *See Eniola v. Leasecomm Corp.*, 214 F.Supp.2d 520, 525 (D.Md. 2002); *Gray v. Metts*, 203 F.Supp.2d 426, 428 (D.Md. 2002).  However, dismissal is

4

proper "when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." *Brooks v. City of Winston-Salem, North Carolina*, 85 F.3d 178, 181 (4th Cir. 1996). *See* 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357, at 714 (3d ed. 2004) ("A complaint showing that the governing statute of limitations has run on the plaintiff's claim for relief is the most common situation in which the affirmative defense appears on the face of the pleading and provides a basis for a motion to dismiss under Rule 12(b)(6).").

## III. Analysis

### A.  Count II - Violation of Fair Labor Standards Act

Plaintiff alleges that Defendant willfully failed to compensate him for the number of hours he worked from approximately June 2004 through April 2005, in violation of the FLSA. Specifically, Plaintiff alleges that Defendant paid him an hourly wage that was less than what white employees received and failed to pay him for overtime hours worked.  Defendant maintains that Plaintiff's claim fails because Plaintiff earns $14 per hour, which was significantly higher than the minimum wage that employers must provide under the FLSA.  In addition, Defendant argues that Plaintiff is not eligible for overtime pay.

The FLSA is a federal statute of general application that establishes minimum wage, overtime pay, child labor, and equal pay requirements.  29 C.F.R. § 778.0.  "All employees whose employment has the relationship to interstate or foreign commerce which the

Act specifies are subject to the prescribed labor standards unless specifically exempted from them." *Id*.   Similarly, all employers having such employees are required to comply with the Act's provisions unless they are relieved by an exemption under the Act. *Id*.   The FLSA was enacted by Congress as a remedial act and, therefore, its exemptions must be narrowly construed.   *See Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960), *reh'g denied*, 362 U.S. 945 (1960).   To state a *prima facie* case under the FLSA, plaintiff must show "as a matter of just and reasonable inference that the wages paid to him did not satisfy the requirements of the FLSA." *Caro-Galvan v. Curtis Richardson, Inc.*, 993 F.2d 1500, 1513 (11th Cir. 1993)(internal citation omitted); *see also Hunter v. Sprint Corp.*, 453 F.Supp.2d 44, 52 (D.D.C. 2006)("plaintiff-employee can make out a *prima facie* case of an FLSA violation by alleging that he performed work for which he was not properly compensated and then 'produc[ing] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'").

   1.  **Minimum Wage**

29 U.S.C. § 206 provides, in relevant part:

> Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates:

> (1) except as otherwise provided in this
> section, not less than--
>
>> (A) $5.85 an hour, beginning on the
>> 60th day after May 25, 2007;
>> (B) $6.55 an hour, beginning 12
>> months after that 60th day; and
>> (C) $7.25 an hour, beginning 24
>> months after that 60th day;

Plaintiff alleges that he made $14 an hour in 2004 and 2005. This is clearly in excess of $7.25 an hour, the minimum wage currently required under the FLSA, and obviously was in excess of whatever the minimum wage was in 2004 and 2005.

**2. Overtime Pay**

29 U.S.C.A. § 207(a)(1) provides:

> (a) Employees engaged in interstate commerce;
> additional applicability to employees pursuant
> to subsequent amendatory provisions
>
> (1) Except as otherwise provided in this
> section, no employer shall employ any of his
> employees who in any workweek is engaged in
> commerce or in the production of goods for
> commerce, or is  employed in an enterprise
> engaged in commerce or in the production of
> goods for commerce, for a workweek longer than
> forty hours unless such employee receives
> compensation for his employment *in excess of
> the hours above specified at a rate not less
> than one and one-half times the regular rate
> at which he is employed.*

(emphasis added). The overtime pay provision in § 207 does not apply to employees "with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of

7

Title 49 [the Motor Carrier Act of 1935]." 29 U.S.C. § 213(b)(1).

49 U.S.C. § 31502(b)(2) provides:

> **(b) Motor carrier and private motor carrier requirements.** The Secretary of Transportation may prescribe requirements for:
>
> (1) qualifications and maximum hours of service of employees of, and safety of operation and equipment of, a motor carrier; and
>
> (2) qualifications and maximum hours of service of employees of, and standards of equipment of, a motor private carrier, when needed to promote safety of operation.

Defendant contends that the overtime pay provision under the FLSA does not apply to truck drivers, like Plaintiff, for whom the Secretary of Transportation has prescribed requirements with respect to maximum hours of service.  Plaintiff insists that the exemption for overtime pay applies only to employees of motor carriers, and that Defendant is not a motor carrier because it does not transport goods for compensation.  Plaintiff's argument stems from the definition of a motor carrier in 49 U.S.C. § 13102(12), which states, "The term 'motor carrier' means a person providing motor vehicle transportation for compensation."

Defendant does not dispute Plaintiff's contention that it does not transport goods for compensation.  However, Defendant points out that there are several types of motor carriers, including common, contract, and private carriers.  Defendant asserts that private carriers do not transport goods for compensation, but are

nonetheless exempt from the overtime pay obligation.  49 U.S.C.A.

§ 13102(15) provides the definition of a private carrier:

> The term "motor private carrier" means a
> person, other than a motor carrier,
> transporting property by motor vehicle when--
>
> (A) the transportation is as provided in
> section 13501 of this title;
>
> (B) the person is the owner, lessee, or bailee
> of the property being transported; and
>
> (C) the property is being transported for
> sale, lease, rent, or bailment or to further a
> commercial enterprise.

Here, Plaintiff alleges in his amended complaint that Defendant

manufactures and distributes mattresses and furniture for sale

throughout the United States.  Defendant's business is clearly in

furtherance of a commercial enterprise.  Therefore, Defendant

qualifies as a private carrier.

The remaining question is whether the exemption for overtime

pay applies to private motor carriers, as Defendant contends.  In

*Bilyou v. Dutchess Beer Distrib.,* 300 F.3d 217 (2$^d$ Cir. 2002), upon

which Defendant heavily relies, the United States Court of Appeals

for the Second Circuit held that the exemption applied to private

motor carriers.  The *Biyou* court went into a lengthy discussion of

the history of the Motor Carrier Act, including its application to

private carriers.  The court pointed out that the Secretary of

Transportation has always retained the authority under the Motor

Carrier Act to prescribe safety requirements relating to maximum

hours and qualifications of employees of *all* motor carriers, including private motor carriers.  *Id*. at 228-29.

Defendant is a private motor carrier and as such, is exempt from the overtime pay provision under 29 U.S.C.A. § 207(a)(1). Because Plaintiff is not entitled to overtime pay, Defendant's motion to dismiss will be granted with respect to this claim.

**B.  Counts III, IV, and V**

Plaintiff alleges that Defendant violated the NLRA (count III), the LMRA (count IV), and is liable for breach of contract (count V).  Defendant contends that common to all of these counts is Plaintiff's assertion that Defendant allegedly failed to comply with the terms of the CBA.  (*See* Paper 1, ¶ 55 (pertaining to count III), ¶ 57 (pertaining to count IV), and ¶ 59 (pertaining to count V)).  Defendant maintains that Plaintiff's claims should be dismissed because: (1) claims that require the interpretation of a CBA are preempted by § 301 of the LMRA, (2) Plaintiff failed to exhaust his administrative remedies and (3) the claims are time barred.

**1.  Preemption**

Section 301 of the LMRA, 29 U.S.C. § 185(a), provides, in pertinent part:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount

in controversy or without regard to the
citizenship of the parties.

It is settled law that any state law claims that require the
interpretation of a CBA are completely pre-empted by § 301 of the
LMRA. *See, e.g., Davis v. Bell Atl.-W.Va., Inc.*, 110 F.3d 245, 248
(4th Cir. 1997); *Kirby v. Allegheny Beverage Corp.*, 811 F.2d 253,
256 (4th Cir. 1987). "A state law claim is preempted when
resolution of the claim 'requires the interpretation of a
collective-bargaining agreement,' *Lingle v. Norge Div. of Magic
Chef, Inc.*, 486 U.S. 399, 405-06 (1988), or is 'inextricably
intertwined with consideration of the terms of the labor
contract.'" *Foy v. Giant Food Inc.*, 298 F.3d 284, 287 (4th Cir.
2002)(quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213
(1985)); *see also IBEW, AFL-CIO v. Hechler*, 481 U.S. 851, 862
(1987)(noting that a state law claim is preempted when "[t]he
nature and scope of the duty of care owed Plaintiff is determined
by reference to the collective bargaining agreement.").

"[T]he question in preemption analysis is not whether the
source of a cause of action is state law, but whether resolution of
the cause of action requires interpretation of the collective
bargaining agreement." *McCormick v. AT & T Techs., Inc.*, 934 F.2d
531, 535 (4th Cir. 1991), *cert. denied*, 502 U.S. 1048 (1992).
Therefore, "[u]nder a proper preemption analysis . . . the first
step is to recognize the essential elements of the state law tort
. . . and against the elements so identified, determine whether the

state law claim can be resolved without interpreting or depending on the proper interpretation of the collective-bargaining agreement." *Barbe v. Great Atl. & Pac. Tea Co., Inc.*, 722 F.Supp. 1257, 1260 (D.Md. 1989).

Here, Defendant contends that counts III, IV, and V are preempted by § 301 of the LMRA because all of these counts require an interpretation of the CBA.  Defendant's argument is confusing because count IV, which is premised on a violation of the LMRA, cannot be "preempted" by § 301 of the LMRA.  In addition, counts III and IV involve federal, not state law, claims.  Therefore, Defendant's preemption argument will be limited to count V, the breach of contract claim.

Plaintiff contends that not every dispute involving a provision of a CBA is preempted by § 301, and cites *Lingle*, 486 U.S. 399, in support of his assertion.  In *Lingle*, an employee brought a state court action claiming that she was terminated in retaliation for exercising her rights under the Illinois Workers' Compensation Act.  Specifically, the plaintiff had been injured in the course of her employment and requested compensation for her medical expenses.  The district court dismissed the complaint, holding that the Plaintiff's claim for retaliatory discharge was inextricably intertwined with the CBA prohibiting wrongful discharge, and was therefore preempted under § 301.  The court of appeals affirmed the decision.  The Supreme Court of the United States reversed, emphasizing that § 301 governs claims founded

12

directly on rights created by CBAs and claims that were substantially dependent on an analysis of CBAs.  The *Lingle* Court reasoned that the plaintiff's claim was not preempted because it did not rely on the interpretation of a CBA, but rather, involved the plaintiff's substantive rights under her individual employment contract.

Here, Plaintiff's claims constitute a direct challenge to the provisions of the CBA, and are therefore distinguishable from the situation in *Lingle*.  Namely, Plaintiff insists that the CBA mandates that he receive a salary of $16.25 per hour, in addition to overtime pay, stop pay, and trip pay.  Defendant, on the other hand, maintains that the CBA makes no such provisions.[1]  Because Plaintiff alleges a breach of the CBA, his breach of contract claim is preempted by § 301 of the LMRA.  *See DelCostello v. Int'l Bhd. of Teamsters v. United Steel Workers of Am.*, 462 U.S. 151, 164 (1983)("The suit against the employer rests on § 301, since the employee is alleging a breach of the collective bargaining agreement.").  Therefore, Defendant's motion to dismiss will be granted with respect to count V, the breach of contract claim.

## 2.  Exhaustion of Administrative Remedies

Ordinarily, an employee bringing suit against his employer for breach of a CBA must "attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining

---

[1]  Neither party has submitted a copy of the CBA for the court's review.

agreement." *DelCostello*, 462 U.S. at 163. "Subject to very limited judicial review, he will be bound by the result according to the finality provisions of the agreement." *Id*. at 164. However, in *Vaca v. Sipes*, 386 U.S. 171 (1967), the Supreme Court crafted an exception to the exhaustion requirement. The Court held that if the union representing the employee in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary or perfunctory manner so as to breach its duty of fair representation, the employee may bring suit against both the employer and the union, notwithstanding the outcome of the grievance/arbitration proceedings.

Defendant contends that counts III and IV should be dismissed because Plaintiff failed to exhaust his administrative remedies. Defendant points out that the only sentence in the complaint that even mentions a grievance is "Mr. Ragland tried to file a grievance through the Union." (Paper 4, ¶ 31). Defendant construes this sentence to mean that neither Plaintiff nor the union actually filed and pursued a grievance. In addition, Defendant argues that the exception to exhaustion does not apply here, as Plaintiff does not allege that the union acted in a discriminatory, dishonest, arbitrary or perfunctory fashion.

Plaintiff counters that Defendant has not demonstrated how the issues raised in the complaint arise under the CBA or that Plaintiff would have been able to obtain a decision on these issues in arbitration. In addition, Plaintiff argues that in the event

14

that the court finds that he would be subject to the grievance procedures, he made every attempt to file a grievance.

Plaintiff has sufficiently alleged that he exhausted his remedies here because pursuant to the Court's holding in *DelCostello*, it is sufficient that an employee *attempt* to exhaust any grievance or arbitration remedies in the CBA.  462 U.S. at 163. Other courts have similarly held that an employee is deemed to have exhausted administrative remedies as long as the employee makes a good faith effort to do so, even if internal remedies are not in fact exhausted.  *See Petersen v. Rath Packing Co.*, 461 F.2d 312 (8th Cir. 1972)(labor union members exhausted internal remedies pursuant to the CBA when they made a good faith attempt to file a grievance and the union elected not to pursue their claims against the employer); *Scott v. Anchor Motor Freight, Inc.*, 496 F.2d 276 (6th Cir. 1974)(employee made a good faith effort to exhaust administrative remedies where he sent a letter to the local union requesting a meeting and a grievance hearing as soon as possible, and the union did not respond).  Here, Plaintiff alleges that he made every attempt to file a grievance, but the union elected not to pursue the grievance on his behalf.  Accepting Plaintiff's allegations as true, Plaintiff made a good faith effort to exhaust his internal remedies pursuant to the CBA.

### 3.  Statute of Limitations

Defendant further argues that counts III and IV should be dismissed because they were not brought within the six month

statute of limitations period as set out in *DelCostello*, 462 U.S. at 169.  Defendant contends that Plaintiff's last identified injury was in October 2007, when he allegedly suffered an unjust termination that was later converted to a suspension.  Defendant points out that Plaintiff's original complaint was filed on July 11, 2008, more than six months after the alleged injury.

Plaintiff counters that Defendant's reliance on *DelCostello* is misplaced because the statute of limitations set by the *DelCostello* court was for a hybrid action against the employer for violation of the CBA as well as the union for failing to represent properly him in the grievance procedures.  Here, in contrast, Plaintiff contends that he is asserting a claim against his employer only, and therefore  is not subject to the six month statute of limitations. However, Plaintiff does not proffer the relevant statute of limitations that he believes should apply in this case.

Section 301 of the LMRA does not provide a statute of limitations.  29 U.S.C. § 185; *Int'l Longshoremen's Assoc. v. Cataneo Inc.*, 990 F.2d 794, 799 (4th Cir. 1993).  Therefore, courts generally apply the most closely analogous statute of limitations under state law.  *DelCostello*, 462 U.S. at 158.  "The implied absorption of State statutes of limitation within the interstices of the federal enactments is a phase of fashioning remedial details where Congress has not spoken but left matters for judicial determination within the general framework of familiar legal principles."  *Id.* at 158-59.  In *Auto Workers v. Hoosier*, 383 U.S.

16

696 (1966), for example, the plaintiff brought suit under § 301 of the LMRA for breach of a CBA.   The Court held that the suit was governed by Indiana's six-year limitations period for actions on unwritten contracts.   *Id*. at 705.   The Court reasoned:

> The present suit is essentially an action for damages caused by an alleged breach of an employer's obligation embodied in a collective bargaining agreement.   Such an action closely resembles an action for breach of contract cognizable at common law.   Whether other § 301 suits different from the present one might call for the application of other rules on timeliness, we are not required to decide, and we indicate no view whatsoever on that question.   *See, e.g., Holmberg v. Armbrecht*, 327 U.S. 392 [66 S.Ct. 582, 90 L.Ed. 743] . . . ." 383 U.S., at 705, n. 7, 86 S.Ct., at 1113, n.7.

Here, Plaintiff alleges that Defendant breached the terms of the CBA by failing to pay him the appropriate wage, as well as overtime pay, trip pay, and stop pay.   Thus, similar to the situation in *Hoosier*, Plaintiff's claim most closely resembles a breach of contract action.   Under Maryland law, the statute of limitations for a breach of contract action is three years from the date the cause of action accrues.   Md Code, Cts. & Jud. Proc. § 5-101; *Towson Univ. v. Conte*, 384 Md. 68, 113 (2004).   "In Maryland, a cause of action for breach of contract accrues when the contract is breached, and 'when the breach was or should have been discovered.'" *Boyd v. Bowen*, 145 Md.App. 635, 669 (2002).

Plaintiff was hired by Defendant on June 24, 2004, and alleges that at some point thereafter he complained to Defendant that he

was being paid less than his fellow white drivers and treated differently than the white drivers, thus indicating that he discovered the potential claim by the time of his first complaint. Plaintiff did not file his complaint until July 11, 2008.  Thus, if Plaintiff complained to Defendant shortly after he was hired in 2004 (which would be the time when he discovered or should have discovered the alleged breach), his claims would be time barred because they would not have been filed within the requisite three year period.  However, if Plaintiff complained any time on or after July 11, 2005, his claims would fall within the three year statute of limitations.

Because it is not clear from the face of the complaint whether the statute of limitations defense even applies here, Defendant's motion to dismiss based on the statute of limitations must be denied.  *Brooks*, 85 F.3d at 181.

### C.  Count VII: Hostile Work Environment

Plaintiff alleges that Defendant unlawfully subjected him to a hostile work environment by forcing him to unload 80 pieces of furniture in 100 degree heat, issuing him fabricated write-ups, terminating him on false grounds, forcing him to work during his timely requested vacation, suspending him unfairly, and denying him the right to spend the night in Virginia Beach when he was experiencing severe back pain.  Defendant contends that a hostile work environment claim does not constitute an independent cause of action and that accordingly, Plaintiff fails to state a claim upon

18

which relief can be granted.  Furthermore, Defendant insists that
to the extent that a portion of this claim alleges disparate
treatment and race discrimination in violation of Title VII,
Plaintiff's claim is duplicative of count I.

Although not artfully pled, Plaintiff does appear to claim
that he was subjected to a hostile work environment based on race
in count III.   Count I, on the other hand, alleges racial
discrimination in pay, write-ups, and denial of vacation days.

To state a claim for hostile work environment harassment under
Title VII or 42 U.S.C. § 1981, Plaintiff must show that: (1) he
experienced unwelcome harassment, (2) the harassment was based on
his race, color, national origin, or age, (3) the harassment was
sufficiently pervasive or severe to alter the conditions of his
employment and create an abusive atmosphere, and (4) there is some
basis for imposing liability on Defendant.  *Causey v. Balog*, 162
F.3d 795, 801 (4th Cir. 1998)(applying factors to a Title VII
hostile work environment action on a motion to dismiss), *Eruanga v.
Grafton Sch., Inc.*, 181 F.Supp.2d 514 (D.Md. 2002)(using the same
analysis for hostile work environment claims under Title VII and 42
U.S.C. § 1981 in the summary judgment context).  First, the fact
that Plaintiff attempted to file a grievance with the Union about
the alleged harassment he suffered suggests that Defendant's
actions were unwelcome.  With respect to the second element,
Plaintiff does not allege that Defendant made any direct comments
about Plaintiff's race.   However, Plaintiff contends that he

experienced harassment that non-African American employees did not face, such as being issued fabricated write-ups, being terminated on false grounds, and being forced to perform heavy labor in extreme temperatures.  Even if Plaintiff could meet the second element, and it is unclear whether his allegations are sufficient, Plaintiff's claim fails because he cannot meet the third element.

"[C]ourts determine whether an environment is sufficiently hostile or abusive by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 339 (4th Cir. 2006)(internal quotations omitted).  "[S]imple teasing, off-hand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."  *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).  Determining whether conduct is so severe or pervasive as to establish a hostile work environment claim is not a "mathematically precise test."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993).  Indeed, the "line between a merely unpleasant working environment . . . and a hostile or deeply repugnant one may be difficult to discern."  *Hopkins v. Baltimore Gas & Elec. Co.*, 77 F.3d 745, 753 (4th Cir. 1996).

Courts have most often found evidence of a hostile work environment based on race where employers direct racial epithets or make statements that are clearly discriminatory. *See, e.g. White v. BFI Waste Servs., LLC,* 375 F.3d 288, 297 (4th Cir. 2004), *vacated on other grounds*, 281 Fed. Appx. 255 (4th Cir. 2008) (reversing and remanding the district court's grant of summary judgment on plaintiff's hostile work environment claim where the defendant repeatedly called the plaintiff and other African American employees "boy, jigaboo, nigger, porch monkey, Mighty Joe Young, and Zulu warrior"); *Spriggs v. Diamond Auto Glass,* 242 F.3d 179, 182 (4th Cir. 2001)(finding evidence of racial harassment where the plaintiff's supervisor "habitually called [the plaintiff] a monkey, dumb monkey, and nigger."); *Holsey v. Armour & Co.*, 743 F.2d 199 (4th Cir. 1984)(evidence of racial harassment where African American employees were assigned duties not part of their jobs, denied training and assistance, were passed over for promotions and transfers to sales position, and company official explained that the company would not hire African Americans to the sales department because customers would not buy from them).

Here, Defendant contends that its alleged actions do not constitute the type of invidious, outrageous, and intolerable harassment that is required to prevail on a hostile work environment claim. Defendant is correct. Plaintiff's allegations of suspension and discipline do not rise to the level of severity

required in an independent hostile work environment claim, nor was the conduct so pervasive that it unreasonably interfered with Plaintiff's work performance.  Therefore, Defendant's motion to dismiss will be granted with respect to Plaintiff's hostile work environment claim.

### D.  Count IX: Article 49B of the Maryland Annotated Code

Plaintiff alleges that Defendant violated Article 49B of the Maryland Annotated Code by paying him less than his fellow white drivers and disciplining him for frivolous reasons.  Defendant points out that Plaintiff cannot state a claim because Article 49B provides a private right of action only for events occurring on or after October 1, 2007.  Defendant asserts that most of Plaintiff's allegations of discrimination and retaliation occurred prior to October 2007.

Article 49B of the Maryland Code allows "a person who has been subjected to an act of discrimination that is prohibited by the Prince George's County Code to bring and maintain a civil action against the person who committed the alleged discriminatory act." Md. Ann. Code art. 49B, § 42(a) (1997).  "Title VII is the federal analog to Art. 49B of the Maryland Code." *Haas v. Lockheed Martin Corp.*, 396 Md. 469, 483 n.8 (2007); *see also Pope-Payton v. Realty Mgmt. Servs., Inc.,* 149 Md.App. 393, 402 n.6 (2003).  A plaintiff must first exhaust his administrative remedies as required by Article 49B § 11B, which provides:

(a) In addition to the right to make an election authorized under § 11A of this subtitle, a complainant may bring a civil action against the respondent alleging a discriminatory act if:

(1) The complainant initially filed a timely administrative charge or a complaint under federal, State, or local law alleging a discriminatory act by the respondent;

(2) At least 180 days have elapsed since the filing of the administrative charge or complaint; and

(3) The civil action is filed no more than 2 years after the occurrence of the alleged act of discrimination.

(b) A civil action under this section may be filed in the circuit court of the county where the alleged act of discrimination took place.

The legislative history of Md. Code, Art. 49B § 11B states that the statute, which went into effect on October 1, 2007, "shall be construed to apply only prospectively and may not be applied or interpreted to have any effect on or application to any cause of action arising before the effective date of this Act."   Md. Laws 2007, chapters 176-77, § 2.

Here, the majority of Plaintiff's amended complaint consists of allegations of discrimination that occurred prior to October 2007.   However, Plaintiff insists that these allegations are not time barred under the "continuing violation" doctrine.   The continuing violation doctrine holds that events that occur outside

the statutory window are not time-barred if they relate to a timely incident as a "'series of separate but related acts' amounting to a continuing violation." *Etefia v. East Baltimore Cmty. Corp.*, 2 F.Supp.2d 751, 757 (D.Md. 1998)(quoting *Beall v. Abbott Labs.*, 130 F.3d 614, 620 (4th Cir. 1997)).

Plaintiff's argument runs contrary to well-established law which holds that the continuing violation doctrine does not apply to discrete discriminatory actions, such as termination or suspension. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, (2002); *Janey v. N. Hess Sons, Inc.*, 268 F.Supp.2d 616, 623 (D.Md. 2003). In addition, the continuing violation doctrine cannot apply here because the Maryland law amending Article 49B, effective October 1, 2007, expressly provides that "it shall be construed to apply *only prospectively* and may not be applied or interpreted to have any effect on or application to any cause of action arising before the effective date (October 1, 2007) of this Act." (emphasis added). Therefore, Plaintiff's Article 49B claim, as it relates to events prior to October 2007, must be dismissed.

Paragraphs 46-49 of Plaintiff's amended complaint describe allegations of retaliation that occurred after October 2007. Plaintiff alleges that Defendant engaged in retaliation after Plaintiff complained to the Union about Defendant's discriminatory actions. Plaintiff alleges that Defendant then terminated him for "alleged hours of service violations," forced him to work on his

first day of vacation once his job was reinstated, and suspended him for three days.

Defendant insists that even as to the four paragraphs referring to events during October 2007 or later, Plaintiff's complaint fails to state a claim because Plaintiff does not allege that he pursued and exhausted his administrative remedies, as required under Article 49B, § 11B. Plaintiff maintains that he exhausted his administrative remedies when he filed a charge with the EEOC and Maryland Commission on Human Rights ("MCHR") in November 2006 complaining of pay, driving assignments, and discipline that occurred in August 2006 or earlier. Plaintiff never filed a subsequent charge of retaliation with respect to events that occurred in October 2007. If this were a Title VII claim, he would not have been required to do so pursuant to *Jones v. Calvert*, 551 F.3d 297 (4th Cir. 2009). In *Jones*, the Fourth Circuit held that a plaintiff's first charge of discrimination filed with the EEOC served to exhaust the plaintiff's subsequent claim of retaliation, regardless of whether the subsequent retaliatory act occurred during or after the pendency of the investigation of the prior EEOC charge. *Id*. at 303. The court reasoned that a plaintiff should be excused from filing an additional EEOC claim alleging retaliation because such a plaintiff would be "gun shy" about incurring further wrath from his employer. *Id*. at 302.

The parties have not addressed the law applicable to exhaustion under Article 49B. Assuming that these requirements parallel Title VII, Plaintiff was not required to file an additional charge with the EEOC and MCHR with respect to his allegations of retaliation that occurred in October 2007. Therefore, the portion of Plaintiff's Article 49B claim that is related to allegedly retaliatory events that occurred after October 2007 will not be dismissed because Plaintiff exhausted his administrative remedies and the claim is not time barred. However, the portion of Plaintiff's Article 49B claim related to events that occurred prior to October 2007 will be dismissed as time barred.

### E. Count X: Intentional Infliction of Emotional Distress

Plaintiff alleges that Defendant paid him less than his fellow white drivers, forced him to work during vacation, wrongfully accused him of falsifying his log records, and reprimanded for frivolous reasons. Defendant maintains that Plaintiff's allegations fall well short of those necessary to sustain a claim for intentional infliction of emotional distress because Defendant's alleged conduct is neither outrageous not extreme.

"Maryland courts have cautioned that the tort of intentional infliction of emotional distress should be imposed sparingly, and 'its balm reserved for those wounds that are truly severe and incapable of healing themselves.'" *Solis v. Prince George's County*, 153 F.Supp.2d 793, 804-08 (D.Md. 2001)(internal citations

26

omitted).  To recover under a claim of intentional infliction of emotional distress under Maryland law, Plaintiff must establish that: (1) the conduct was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress was severe.  *Gantt v. Sec. USA*, 356 F.3d 547, 552 (4th Cir. 2004).

To satisfy the first element, the plaintiff must demonstrate that the defendant either "desired to inflict severe emotional distress, knew that such distress was certain or substantially certain to result from his conduct, or acted recklessly in deliberate disregard of a high degree of probability that emotional distress would follow."  *Interphase Garment Solutions, LLC v. Fox Television Stations, Inc.*, 566 F.Supp.2d 460, 466 (D.Md. 2008) (internal citation omitted).  To satisfy the second element, the conduct in question must "completely violate human dignity," and "strike to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung."  *Id.* (internal citation omitted).  To satisfy the fourth element, "one must suffer an emotional response so acute that no reasonable person could be expected to endure it.  One must be unable to function, one must be unable to tend to necessary matters."  *Id.* (citing *Reagan v. Rider*, 70 Md.App. 503, 512 (1987)).

27

Plaintiff's claim cannot prevail.  Driving assignments, denial of vacation, and discipline in the form of reprimands and suspensions fall well short of the outrageous or extreme conduct required to succeed on a claim of intentional infliction of emotional distress.  Moreover, Plaintiff has not alleged that he suffered from a severely disabling emotional response to Defendant's conduct, as required under the fourth element.  *Harris v. Jones*, 281 Md. 560, 616 (1977).  Plaintiff generally alleges that he suffered "severe emotional distress," but provides no information about the extent of his distress.  Plaintiff's general allegations cannot survive a motion to dismiss.

## IV.  Conclusion

For the foregoing reasons, Defendant's motion to dismiss will be granted in part and denied in part.  A separate Order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge